IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO
_____

G. M. "JERI" RUNDQUIST,

        Plaintiff,

v.                                        No. CIV 97-275 BB/DJS

LONG JOHN SILVER'S, INC.,
et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER
DENYING PARTIAL SUMMARY JUDGMENT**

THIS MATTER is before the Court on the motion of Defendant, Long John Silver's, Inc., for partial summary judgment, and the Court having considered the briefs and submissions of counsel, FINDS the motion is not well taken and should be Denied.

**Discussion**

**I.   Background Facts**

The Long John Silver's restaurant in Farmington, New Mexico, is owned by American Seafood Partners, L.P. ("Partners"), and managed by Restaurant Management Company of Wichita, Inc. ("Management"). Management in turn owns 47% of Partners. Long John Silver's, Inc. ("LJS") has a twenty-year

agreement allowing Partners to operate the Farmington location as a Long John Silver's franchise restaurant. Pursuant to the Franchise Agreement, Partners purchased the "LJS System." The System consists of four large manuals which detail the shape and size of the restaurant; bookkeeping procedures; food preparation, procedures and portions; uniforms and supplies, and even the use of all LJS manuals.

Shortly before closing on March 16, 1994, Plaintiff, Jeri Rundquist, her daughter, and two of her grandchildren entered the Long John Silver's restaurant in Farmington. Ms. Rundquist purchased iced tea. Upon making her purchase, an employee of Long John Silver's gave Ms. Rundquist a cup of ice and told her to fill her cup with tea from the iced tea urn in the dining room. Ms. Rundquist filled her cup as instructed. Immediately after drinking the "iced tea," she experienced an extreme burning sensation in her mouth, throat and stomach and began vomiting. Ms. Rundquist became ill apparently because the iced tea urn dispensed the sanitizer Kay-5 instead of iced tea.

## II.  **Standard for Summary Judgment**

The party moving for summary judgment has the burden of establishing that it is entitled to such judgment. *Bell v. Dillard Dept. Stores, Inc.*, 85 F.3d 1451 (10th Cir. 1996). "Summary judgment is proper only if the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Quaker State Minit-Lube, Inc. v. Fireman's Fund Ins. Co.*, 52 F.3d 1522, 1527 (10th Cir. 1995) (quoting Fed. R. Civ. P. 56(c)). "All facts and reasonable inferences must be construed in the light most favorable to the nonmoving party." *Id.* On a motion for summary judgment, the issue is "not whether [the court] thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

### III. Liability Standard for Franchisors in New Mexico

Being neither a true agency relationship nor an agreement between independent contractors, franchises do not fit neatly within the long established legal analytical framework. Michael R. Flynn, Note, *The Law of Franchisor Vicarious Liability: A Critique*, 1993 Colum. Bus. L. Rev. 89, 90 (1993). However, because a franchise agreement shares elements of both the agency and an independent contractor relationship, it is not surprising that it is to these two legal paradigms the courts have turned when considering torts involving franchise premises. *Id.*

Since this case invokes the Court's diversity jurisdiction, the law of New Mexico is the Rosetta Stone for determining the substantive legal standard. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938). New Mexico has adopted the "control standard" from agency law to determine when a franchisor should be liable for torts committed on the franchise premises. *Chevron Oil Co. v. Sutton*, 515 P.2d 1283, 1286 (N.M. 1973). Merely displaying the franchisor's logo and/or selling the franchisor's products are not sufficient alone to force the franchisor to answer for injuries occurring on the franchise premises. *Shaver v. Bell*, 397 P.2d 723, 728 (N.M. 1964). *Cf. Ciup v. Chevron U.S.A., Inc.*, 928 P.2d 263 (N.M. 1996) (no actual franchise agreement but applying standard analysis to these facts). If the franchisor exercises sufficient control of a franchisee, however, the doctrine of respondeat superior is invoked. *Chevron Oil Co. v. Sutton, supra.* Therefore, where the franchisor directs relevant details or exerts day-to-day control over the franchisee's operation, a fact finder must determine whether the franchisor should be held legally responsible for the injury. *Chevron Oil Co. v. Sutton, supra; Shaver v. Bell, supra.*

### IV. Genuine Issues of Material Fact

Construing the facts and reasonable inferences in the present record in the light most favorable to Plaintiff, it seems clear there are material facts which must

4

be submitted to the jury.  These facts are outlined by Plaintiff in her Response in Opposition to Defendants' Motion:

1) LJS required its Franchisee to utilize Kay-5 sanitizer and supplied its Franchisee with the ice tea urn at issue in this case;

2) LJS directed its Franchisee to clean the ice tea urn with Kay-5 sanitizer;

3) LJS directed the Franchisee to contact Poison Control if a customer ingests Kay-5 and provide Poison Control with Kay Chemical's phone number; and

4) LJS directed its Franchisee to follow lengthy, detailed cleaning instructions, which in relevant part include:

AFTER CLOSING … Clean and sanitize iced tea urn. [LJS's emphasis.]

The ice tea urn and spigot must be cleaned and sanitized with Kay-5 every night.  Allow sanitizer solution to soak for 30 minutes, and drain it through the spigot.  Then remove the cover and pour out remaining solution.  Invert the urn and allow it to air dry over night....

Always empty the urn between batches and rinse it thoroughly.

… **make absolutely sure all sanitizer solution from the night before has been emptied from the urn**. [LJS's emphasis.]

Before making tea in the morning, check to be **absolutely sure** no sanitizer remains. [LJS's emphasis.]

Pl.'s Resp. Opp'n Defs.' Mot. Partial Summ. J. at 3.

Since the accident involved the Partners' use of the Kay-5 cleaning product and methods minutely detailed in the Cleaning and Equipment Manual provided by LJS, it cannot be determined whether LJS exercised sufficient control of Partners to be subject to legal liability as a matter of law. The law of New Mexico,[1] and in other jurisdictions,[2] dictates the submission of franchisor liability to the jury on such facts. The motion for summary judgment by LJS must therefore be denied.

### **O R D E R**

For the above stated reasons, the motion of Long John Silver's, Inc., for partial summary judgment [#34] is **DENIED**.

---

[1] *See Chevron Oil Co. v. Sutton* finding genuine issue of material fact on whether oil company, which required lessees of independent gasoline stations to diligently promote sale of company's brand products, which required operators to wear uniforms containing company's emblem and which permitted customers to charge products and repairs on company's credit cards, had entered into a master-servant relationship or an independent contractor relationship with station operator, and *Shaver v. Bell* holding that depositions and affidavits, which indicated that service station sublessee had employed station supervisor to check the station every week or two and might have terminated occupancy of station if it were found very dirty or if operators sold other brands of gasoline, raised a fact issue whether operators were independent contractors or were employees of sublessee, thus precluding summary judgment for sublessee.

[2] *Miller v. McDonald's Corp.*, 945 P.2d 1107 (Or. App. 1997) (fact issue whether franchise created agency for claim of foreign object in food); *Brown v. McDonald's Corp.*, 655 N.E.2d 440 (Ohio App. 1995) (whether franchisor was manufacturer of burger a fact question; case also augurs in favor of submitting the strict liability issue to the jury).

Dated at Albuquerque this 20th day of February, 1998.

                                                   */s/ Bruce D. Black*
                                                 BRUCE D. BLACK
                                                 United States District Judge

Counsel for Plaintiff:
     Michael Chapman, Shand, Newbold & Chapman, Durango, CO
     Alex C. Tejada, Durango, CO

Counsel for Defendants:
     Terrance P. Yenson, Tammi A. Gauthier, Hatch, Allen & Shepherd, Albuquerque, NM